## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2019, 6:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re: The Termination of the Parent-Child Relationship of: C.M., Ki.M., Ka.M., and K.C. (Minor Children);

A.C. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 20, 2019

Court of Appeals Case No. 18A-JT-2714

Appeal from the Owen Circuit Court

The Honorable Kelsey B. Hanlon, Judge

Trial Court Cause Nos.
60C02-1806-JT-139
60C02-1806-JT-140
60C02-1806-JT-141
60C02-1806-JT-142

**Pyle, Judge.**

# Statement of the Case

A.C. ("Mother") appeals the termination of the parent-child relationship with her four children (collectively, "Children").[1] She contends that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in Children's removal or the reasons for placement outside Mother's home will not be remedied; (2) a continuation of the parent-child relationships pose a threat to Children's well-being; and (3) terminations of the parent-child relationships are in Children's best interests. Concluding that there is sufficient evidence to support the juvenile court's terminations of the parent-child relationships, we affirm the trial court's judgment.

We affirm.

# Issue

Whether there is sufficient evidence to support the terminations of the parent-child relationships.

# Facts

The evidence and reasonable inferences that support the judgment reveal that Mother and Father are the biological parents of: C.M., born in 2009; Ki.M.,

---

[1] R.M. ("Father") is not a party to this appeal.

born in 2012; Ka.M., born in 2013; and K.C., born in 2015.[2]  On November 22, 2015, DCS was informed of allegations of domestic violence, drug use in the home, a homicide occurring in Mother's home, and dental neglect.[3]  DCS Family Case Manager Charlotte Church ("FCM Church"), who visited the home the following day, found it to be in disarray.  Mother stated that the disarray was the result of a domestic altercation.  Based on concerns of safety and substance abuse within the home, Children were removed from the home.  They were initially placed with their maternal grandmother and then later placed with foster families.

[4]  Thereafter, on November 25, 2015, DCS filed a petition alleging that Children were Children in Need of Services ("CHINS").  In February 2016, Children were adjudicated to be CHINS.  Mother's dispositional decree required her to, among other things, maintain weekly contact with the FCM, undergo and successfully complete a substance abuse assessment, abstain from using drugs and alcohol, maintain suitable housing, participate in drug screenings, and participate in supervised visitations.

[5]  Mother initially complied with drug testing and tested negative.  However, beginning in March 2017 and continuing through February 2018, Mother either

---

[2] In July 2018, after the petitions for termination were filed, Mother and Father had another child, C.C., who is not involved in this termination proceeding.

[3] Following an investigation into the alleged homicide, no evidence of a homicide was found, and neither Mother nor Father were ever charged.

refused to submit or did not show up to submit to numerous drug screens. In addition, in August 2018, Mother tested positive for Oxycodone.

[6] Mother's participation with other recommended services was inconsistent. For example, Mother participated in supervised visitations until late 2017. Mother also failed to maintain weekly contact with the FCM. Finally, Mother participated in additional assessments but failed to consistently participate in the services for which she was referred after the additional assessments.

[7] In June 2018, DCS filed a petition to terminate the parental rights of Mother and Father. Thereafter, in September 2018, the juvenile court held a termination hearing. Mother denied that there had been a history of domestic violence between her and Father, contradicting her prior statement to FCM Church. When discussing her substance abuse issues, Mother admitted that she had used methamphetamine as recently as late June 2018 or early July 2018. Mother's testimony also revealed that she had been arrested on December 19, 2017.[4] She further explained that on that date, she had had a three-hour supervised visit with Children at her residence and that she had not seen them since.

---

[4] As a result of her arrest, Mother was charged with Level 2 felony dealing in methamphetamine and Level 6 felony maintaining a common nuisance under Cause Number 60C01-1712-F2-958. The State later added Class C misdemeanor possession of paraphernalia to Mother's charges. Father was also arrested on December 19, 2017 and charged with Level 2 felony dealing in methamphetamine, Level 3 felony dealing in methamphetamine, and Level 6 felony dealing in a schedule II controlled substance under Cause Number 60C01-1712-F2-951.

[8]     Michael Campbell ("Campbell"), Mother's individual therapist from November 2016 to May 2017, testified that he had performed a parenting assessment and had recommended Relapse Prevention Plan services for Mother. Campbell testified that before Mother's therapy was closed, "there were five no-shows [and] nine cancellations[.]" (Tr. 106). He further explained that when he last saw her in May 2017, therapy had not been completed.

[9]     Court Appointed Special Advocate Elizabeth Eaton ("CASA Eaton") testified that she thought it was appropriate for Children's respective foster families to proceed with adoption because it would provide permanency and be in their best interests. When asked to explain her reasoning, CASA Eaton expressed a similar sentiment for each child that adoption would be successful given the length of time spent with their families and the bonds that had been established.

[10]    Finally, FCM Shea Finnegan ("FCM Finnegan") testified that she has been the case manager since 2016. FCM Finnegan stated that Mother had not completed her services. She also expressed her concerns on the need for permanency for Children because both parents faced charges at the time of the termination hearing and the fact that the case had been pending for three years. FCM Finnegan further explained that she had safety concerns about Children returning home, specifically stating:

> The basic safety concerns are that the initial reason for DCS's involvement regarding [parents] have not, at all been addressed and services have not been completed, [it] is therefore quite possible that the same things that happened prior to DCS involvement will then again happen to the children and that is putting children at risk, that is not safe.

(Tr. 205).

Following the hearing, in October 2018, the juvenile court issued four separate orders terminating Mother and Father's parental relationship with Children. Mother now appeals.

# Opinion

Mother argues that there is insufficient evidence to support the terminations of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of the right when parents are unwilling or unable to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgement. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id*. (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the

evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[14] A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1231.

[15] Here, Mother first asserts that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in Children's removal or the reasons for placement outside the parent's home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to Children's well-being.

[16] We note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.*, 924 N.E.2d 212, 220

(Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in Children's removal or the reasons for placement outside the home will not be remedied.

[17] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014). We first identify the conditions that led to the removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivations. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013). The trial court may also consider services offered to the parent by DCS and the response by the parent to those services as evidence of whether conditions will be remedied. *Id.* DCS is not required to provide evidence ruling out all possibilities of change. *Id.* Rather, it need only establish a reasonable probability that the behavior of the parent will not change. *Id.*

[18] Here, the conditions that led to Children's removal were allegations of, domestic violence, drug use, and dental neglect. Initially, Mother complied

with drug screening. However, Mother stopped complying and refused numerous drug screens during 2017 and 2018. The trial court could have reasonably inferred that Mother had refused the drug screens because she would have tested positive. *See In re A.B.*, 924 N.E.2d 666, 671 (Ind. Ct. App. 2010) (noting that a parent cannot be permitted to refuse to submit to drug testing, then later claim that DCS has failed to prove that the drug use has continued). Additionally, Mother admitted to methamphetamine use and had tested positive for Oxycodone during the Summer of 2018. Based on the foregoing, the evidence supports the trial court's conclusion that there was a reasonable probability that the reasons for Children's placement outside the home would not be remedied. We find no error.

[19] Mother also argues that there is insufficient evidence that the terminations were in Children's best interests. In determining whether the termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id*. Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*. In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904

N.E.2d 1257, 1265 (Ind. 2009), *reh'g denied*. Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[20] Our review of the evidence reveals that at the time of the termination hearing, Children had been living in stable and loving homes with their foster families. CASA Eaton testified that Children had bonded with their families and that it would be detrimental to remove them from their homes. Both CASA Eaton and FCM Finnegan testified that adoption would be in Children's best interests. FCM Finnegan also discussed her concerns for permanency for Children because at the time of the termination hearing, both parents faced charges.[5] Moreover, Mother testified at the termination hearing that the last time she saw Children was in December 2017. The failure to exercise the right to visit one's child demonstrates a "lack of commitment to complete the actions necessary to preserve the parent-child relationship." *Lang v. Starke Cty OFC*, 861 N.E.2d 366,

---

[5] Pursuant to Indiana Evidence Rule 201(a)(2)(c), this Court may take judicial notice of records of a court of this state. Here, we take judicial notice of Mother's conviction and sentence in Cause Number 60C01-1712-F2-958. Our review of those records reveal that Mother pleaded guilty to Level 6 felony maintaining a common nuisance and Class C misdemeanor possession of paraphernalia. The trial court sentenced Mother to one (1) year for the Level 6 felony and ninety (90) days for the Class C misdemeanor and ordered the sentences to run consecutive to each other. Mother's sentences were suspended to probation. However, she is currently incarcerated awaiting an initial hearing on a petition to revoke probation that alleges, among other things, a positive urine screen. We also take judicial notice of Father's conviction and sentence in Cause Number 60C01-1712-F2-951. Our review of those records reveal that Father was convicted of Level 2 felony dealing in methamphetamine, Level 3 felony dealing in methamphetamine, and Level 6 felony dealing in a schedule II controlled substance. The trial court sentenced Father to two (2) years for the Level 6 felony conviction, sixteen (16) years for the Level 3 felony conviction, and thirty (30) years for the Level 2 felony conviction and ordered the sentences to run concurrently with each other. Father's projected release date is in March 2037.

372 (Ind. Ct. App. 2007) (quotations omitted), *trans. denied*. The testimony of the service providers and Mother, as well as the other evidence previously discussed, supports the trial court's conclusion that termination is in Children's best interests.

[21] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d, 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[22] Affirmed.

Robb, J., and Mathias, J., concur.